# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

ALFRED DEAL                                       CIVIL ACTION

VERSUS

DEPARTMENT OF CORRECTIONS,      NO.: 15-00534-BAJ-EWD
ET AL.

## RULING AND ORDER

Before the Court is the **Motion for Partial Summary Judgment (Doc. 44)** filed by Major Leonard Williams, and Sergeant Adam Frye, and Captain Alonzo Webb. Plaintiff did not file an opposition. For the reasons that follow, the motion is GRANTED IN PART and DENIED IN PART.

## I. FACTUAL HISTORY

Because Plaintiff has not opposed Defendants' motion, pursuant to Local Rule 56(b),[1] all material facts set forth in Defendants' statement of uncontested material facts (Doc. 44-2) are deemed admitted. The statement of undisputed facts establish, for purposes of summary judgment, that:

1. Plaintiff, Alfred Deal (DOC #96506), is an inmate sentenced to the custody of the Louisiana Department of Public Safety and Corrections ("D.O.C.");

---

[1] Local Rule 56(b) provides that

> Each copy of the papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule.

2. At all relevant times, Plaintiff was confined at Louisiana State Penitentiary ("LSP") in Angola, Louisiana;

3. Plaintiff brings the instant action against defendants under 42 U.S.C. §1983, alleging that the defendants violated his rights under the Fourteenth Amendment;

4. On August 4, 2014, Plaintiff was housed at the Camp J Management Program, at Gar 4 Unit, Right Tier;

5. At approximately 10:00 p.m. to 11:00 p.m. on August 9, 2014, Plaintiff was involved in an altercation with another LSP offender named Brandon Brown, who was on his tier hour;

6. Subsequent to this incident, Plaintiff became involved in a verbal altercation with Defendant Williams, who was on the tier with Defendant Webb;

7. As a result, Defendant Williams administered the chemical agent phantom into Plaintiff's cell;

8. Plaintiff was then transported to the LSP medical facility, where he received a medical examination at approximately 12:16 a.m. on August 10, 2014;

9. During this examination, no complaints were made regarding exposure to cleaning chemicals such as bleach or stripper;

10. This examination revealed some redness to Plaintiff's chest and head area, but no other objective findings;

11. Plaintiff was again seen by LSP medical at approximately 6:36 a.m. after he made a routine sick call request;

2

12. In this sick call request, Plaintiff made no complaints that he was exposed to cleaning chemicals such as bleach or stripper;

13. During this examination, no redness was noted to Plaintiff's eyes, no redness or blistering was noted to Plaintiff's visible skin, and Plaintiff exhibited no signs of distress;

14. On August 11, 2014, a medical examination again indicated complaints relating to exposure to chemical agents, but no indication that he was exposed to bleach or stripper. Plaintiff did indicate, however, that he swallowed some chemical agent;

15. The August 11 examination indicated redness of the throat, but no other objective findings regarding his throat;

16. Only in his sick call form completed on August 12, 2014, did Plaintiff first mention any complaint of exposure to cleaning chemicals;

17. Between August 9, 2014 and January 1, 2015 alone, Plaintiff was examined at least forty (40) times by LSP medical;

18. The dates of these are examinations are: August 11, 2014; August 12, 2014; August 14, 2014; August 21, 2014; August 26, 2014; August 30, 2014; September 1, 2014; September 4, 2014; September 7, 2014; September 9, 2014; September 20, 2014; September 22, 2014; September 24, 2014; September 27, 2014; September 28, 2014; October 2, 2014; October 4, 2014; October 6, 2014; October 7, 2014; October 9, 2014; October 10, 2014; October 11, 2014; October 14, 2014; October 16, 2014; October 18, 2014; October 21, 2014; October 23, 2014; October 29, 2014; October 30, 2014;

November 2, 2014; November 4, 2016; November 6, 2014; November 12, 2014; November 16, 2014; November 20, 2014; November 22, 2014; November 27, 2014; November 30, 2014; December 7, 2014; December 14, 2014; December 17, 2014; December 22, 2014; and December 28, 2014;

19. Other than the redness to Plaintiff's chest and head noted immediately after the incident, and some redness to Plaintiff's throat noted on August 11, 2014, no other objective findings were noted during this time period;

20. By his own admission, Plaintiff has received medication and treatment for the injuries he alleges, such as antibiotics and creams;

21. By Plaintiff's own admission, frequent distribution of cream has prevented any dermatological issues from getting worse;

22. Due to the August 9, 2014 incident, Plaintiff received a disciplinary write-up for two disciplinary offenses, Rule 30-W (general prohibited behavior) and Rule 5 (aggravated disobedience);

23. Plaintiff pleaded not guilty before the disciplinary board, and was convicted of only the aggravated disobedience violation;

24. Plaintiff was sentenced to ninety days quarters change, which was suspended;

25. Plaintiff appealed this disciplinary conviction, which was upheld by the LSP administration;

26. Prior to the August 9, 2014, incident, Plaintiff had no previous interactions with offender Brandon Brown;

4

27. The training records of Defendants Webb, Williams, and Frye show that the received comprehensive training in regard to their interactions with offenders, including use of force.

(Doc. 44-2 at pp. 1–4, ¶¶ 1–27). To establish these facts, Defendants rely upon Plaintiff's deposition (Doc. 44-3), the affidavit of Captain Webb (Doc. 44-4), Plaintiff's medical records (Docs. 44-5 to 44-17), internal prison records (Docs. 44-18 to 44-26), Defendants' training records (Docs. 44-27 to 44-29), testimony from a purported medical expert (Doc. 44-30), and Plaintiff's answers to interrogatories (Doc. 44-31).

## II. PROCEDURAL HISTORY

Plaintiff initially brought this suit pro se (Doc. 1); however, Plaintiff then retained counsel and filed his Amended Complaint. (Doc. 12). Plaintiff's Amended Complaint named the D.O.C., Warden Burl Cain, Captain Webb, Major Williams, and Sergeant Frye. (*Id.* at ¶¶ 9–13). The Court previously dismissed Plaintiffs' claims against the D.O.C. and granted partial summary judgment, dismissing all claims against Warden Cain and certain claims that had not been administratively exhausted. (Doc. 38 at p. 9).

Defendants filed the motion *sub judice* seeking summary judgment on the Plaintiff's following claims: (1) Plaintiff's state law claims against all Defendants; (2) Plaintiff's claim for falsifying prison documents against all Defendants; (3) Plaintiff's failure-to-protect claim against Sergeant Frye; (4) Plaintiff's excessive force claim against Captain Webb; (5) Plaintiff's failure-to-train and failure-to-

5

supervise claim against Captain Webb; (6) Plaintiff's deliberate medical indifference claim. (Doc. 44 at pp. 3–8).

## III. LEGAL STANDARD

Pursuant to the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant is entitled to summary judgment, the court views the facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). When the non-movant fails to file a memorandum in opposition to a motion for summary judgment, a court may accept as undisputed the facts that the movant submits in support of its motion. *See Euersley v. MBank Dall.*, 843 F.2d 172, 174 (5th Cir. 1988). Even if the motion is unopposed, the Court may not grant a motion for summary judgment unless the moving party meets its burden. *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 (5th Cir. 1995).

"A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Austin v. Kroger Tex., L.P.*, 846 F.3d 326, 328 (5th Cir. 2017) (quoting *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 417(5th Cir. 2008)). In other words, summary judgment will lie only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits if any, show that there is no genuine issue

as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Sherman v. Hallbauer*, 455 F.2d 1236, 1241 (5th Cir. 1972).

IV. **DISCUSSION**

A. **Sovereign Immunity**

Defendants first argue that all state claims against Defendants, even those brought against them in their individual capacities, should be dismissed based on sovereign immunity. The Eleventh Amendment bars federal suits against states or their agencies without the states' consent. *See Seminole Tribe v. Florida*, 517 U.S. 44, 53–54 (1996); *Cozzo v. Tangipahoa Parish Council—President Gov't*, 279 F.3d 273, 280 (5th Cir. 2002). The United States Court of Appeals for the Fifth Circuit has noted that "[b]y statute, Louisiana has refused any such waiver of its Eleventh Amendment sovereign immunity regarding suits in federal courts." *Cozzo*, 279 F.3d at 281 (citing La. Rev. Stat. ann. § 13:5106(A)).

Defendants rely on a Fifth Circuit case, *Hughes v. Savell*, 902 F.2d 376 (5th Cir. 1990), for the broad proposition "that claims of state law negligence against state officials performing acts within the course and scope of their employment are barred by the Eleventh Amendment." (Doc. 44-1 at p. 5). *Hughes*, which involved a failure to protect claim against a prison guard, held that because "Louisiana law places the onus on the state to protect one prisoner from attacks by another prisoner," the plaintiff's claims against the prison guard actually sought "recovery from the state." *See id.* at 379 ("Louisiana tort law places the duty to safeguard [prisoner] on the State of Louisiana and designates [the guard] as Louisiana's agent. In order for [prisoner]

7

to plead a cause of action for [the guard's] negligence, [prisoner] must sue [the guard] as an agent of the state."). Subsequent decisions, however, have limited to applicability of *Hughes* to those rare instances "where the only avenue for [the plaintiff] to sue the official [is] as an agent of the state, i.e., in the state official's official capacity." *New Orleans Towing Ass'n v. Foster*, 248 F.3d 1143 n.2 (5th Cir. 2001) (unpublished) (King, C.J.). In other words, "the question is whether the state officials here could be personally liable for the state law violations." *Reyes v. Sazan*, 168 F.3d 158, 162 (5th Cir. 1999).

This Court is bound by Fifth Circuit precedent; therefore, it will dismiss the state law negligence claims that stem from Defendants' alleged failure to protect Plaintiff from an attack by another inmate. *See Hughes*, 902 F.2d at 379; *but see Copsey v. Swearingen*, 762 F. Supp. 1250, 1255 n. 2 (M.D. La. 1991) (Parker, J.) *rev'd in part on other grounds by* 36 F.3d 1336 (5th Cir. 1994) (arguing that "*Hughes* is clearly in error as to Louisiana law"). Defendants have not, however, pointed to any Louisiana law that limits the ability for Plaintiff to collect against Defendants in their individual capacity for his other state law negligence claims. Nor has the court found any. To the contrary, Louisiana law is clear that "the employee's liability [is] primary and the employer's liability [is] secondary or derivative." *Sampay v. Morton Salt Co.*, 395 So. 2d 326, 327 (La. 1981). Therefore, Defendants may be held personally liable for the other state law torts that arise in the course and scope of their employment.

## B. Qualified Immunity

Defendants argue that they are entitled to summary judgment on Plaintiff's § 1983 claims because they are entitled to qualified immunity. When pleaded in a motion for summary judgment, qualified immunity shifts the burden from the defendant to the plaintiff to establish, by competent evidence, that there is a genuine dispute of material fact with respect to whether (1) the official violated an actual statutory or constitutional right and (2) the official's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). The Court may address these prongs in either order. *See Pearson*, 555 U.S. at 236. Even when construing all facts and drawing all reasonable inferences in a light most favorable to the non-moving party, qualified immunity immunizes "all but the plainly incompetent or those who knowingly violate the law." *Poole*, 691 F.3d at 627.

### 1. *Falsification of Documents*

Plaintiff claims that Defendants "falsified a log sheet to divert the blame" onto Plaintiff. (Doc. 12 at ¶ 17). The Court will dismiss Plaintiff's claim that Defendants falsified prison documents because Plaintiff has not pointed to any competent evidence to support his charge that prison documents were falsified. Therefore, the claim for falsification of documents is DISMISSED.

### 2. *Failure to Protect*

Plaintiff next alleges that Sergeant Frye failed to protect him when he allowed offender Brandon Brown out of his cell in violation of proper protocol. (Doc. 44-1 at

9

p. 8). Defendants can be held liable for failure to protect an inmate only when the official is deliberately indifferent to a subjective risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Deliberate indifference is a stringent standard that requires Plaintiff to establish (1) that the officer was aware of facts from which a substantial risk of serious harm could have been inferred and (2) that the officer actually drew the inference. *Ball v. LeBlanc*, 792 F.3d 584, 594 (5th Cir. 2015).

Plaintiff's deposition makes it clear that he never had any conversation or communication with Brown prior to this altercation (Doc. 44-3 at p. 17, ll. 19–22), and there is no evidence that Sergeant Frye was aware of any facts from which he could have inferred a substantial risk of serious harm by placing Plaintiff and Brown in close proximity to one another. Therefore, Plaintiff's failure to protect claim against Sergeant Frye is DISMISSED.

### 3. *Excessive Force*

Defendants next seek dismissal of Plaintiff's excessive force claim against Captain Webb, arguing that there is no evidence that he doused Plaintiff with bleach and stripper. The Supreme Court has held that the "unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers,* 475 U.S. 312, 319 (1986) (internal quotations omitted). "Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.' " *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981). Within the prison conditions context, courts are required to ascertain whether

the officials involved acted with "deliberate indifference" to the inmate's health or safety. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). "

Plaintiff's medical record refutes his claim that he suffered "extreme burns" from being covered with bleach and stripper. When a plaintiff's medical records show no evidence of injuries consistent with a plaintiff's claims, the court is permitted to find his claims implausible. *See Wilburn v. Shane*, 193 F.3d 517 (5th Cir. 1999) (unpublished) (per curiam) (citing *Wesson v. Oglesby*, 910 F.2d 278, 281–82 (5th Cir. 1990). Plaintiff never mentioned being doused with bleach or stripper by Captain Webb when he was treated just hours after the purported incident. (Doc. 44-13 at pp. 4–6). Accordingly, Plaintiff's excessive force claim against Captain Webb is DISMISSED.

### 4. *Failure to Train or Supervise*

Plaintiff argues that Captain Webb "was endowed with responsibility regarding the provision of security to persons in the custody of the D[.]O[.]C[.]"and that he was "responsible for the policies, practices, and customs of the D[.]O[.]C[.]" (Doc. 12 at ¶ 11).

When alleging a failure to train or supervise, Plaintiff "must show that '(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'" *Gates*, 537 F.3d at 435 (quoting *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005)). In all but the most exceptional of

circumstances, a failure-to-train claim requires a pattern of similar occurrences. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011).

Plaintiff only points to his single incident for evidence of a failure to train or supervise, which is not enough to support such a claim. *See id.* Additionally, Defendants have shown that they did in fact receive training. (Docs. 44-27, 44-28, 44-29). Thus, Plaintiff's failure to train or supervise claim against Captain Webb is DISMISSED.

     5.    *Deliberate Medical Indifference*

Plaintiff claims that Defendants were deliberatively indifferent to his medical needs following Plaintiff's contact with chemical agents. (Doc. 12 at ¶ 35). To succeed, Plaintiff must raise a genuine dispute of material fact concerning whether Defendants acted with deliberate indifference to his medical needs. An official acts with deliberate indifference when he "consciously disregard[s] a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 839 (1994) (internal quotations and citations omitted). Deliberate indifference requires Plaintiff to establish (1) that the officer was aware of facts from which a substantial risk of serious harm could have been inferred and (2) that the officer actually drew the inference. *Ball*, 792 F.3d at 594. Deliberate indifference presents, for the plaintiff, "an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotations omitted).

The facts do not demonstrate deliberate indifference to Plaintiff's medical needs. Plaintiff was seen by doctors on multiple occasions after he was doused with

12

chemical agents, (*see* Doc. 44-13 at p. 6 to Doc. 44-13 at p. 7) and he was provided with medication to treat his injuries, (Doc. 44-3 at pp. 69–70,ll. 18–25, 1–15). Therefore, Plaintiff's deliberate medical indifference claim is DISMISSED.

C.   **Injunctive Relief**

Finally, Defendants seek dismissal of Plaintiff's claim for injunctive relief. In order to establish that a permanent injunction is warranted, "[a] Plaintiff must demonstrate (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardship between the plaintiff and defendants, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Ebay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Most of Plaintiff's claims center around isolated incidents of alleged excessive force, and Plaintiff has not shown irreparable injury or that monetary damage would be inadequate to compensate his injuries. Those claims that do not center around a single incident—failure to train or supervise and deliberate indifference to Plaintiff's medical needs—have been dismissed. Therefore, a permanent injunction is unwarranted.

V.   **CONCLUSION**

Accordingly,

**IT IS ORDERED** that the Motion for Partial Summary Judgment (Doc. 44) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiff's state law claim for negligence arising from Defendant's failure to protect him is **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff's § 1983 claim for falsification of documents is **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff's § 1983 failure to protect claim is **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff's § 1983 excessive force claim against Captain Webb is **DISMISSED**.

**IT IS FURTHER OREDED** that Plaintiff's § 1983 deliberate indifference to his medical needs claim is **DISMISSED**.

**IT IS FUTHER ORDERED** that Plaintiff's request for injunctive relief is **DENIED**.

Baton Rouge, Louisiana, this 22nd day of December, 2017.

_____
**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**